59 CCPA

The **UNITED STATES**, Appellant,

v.

**AMPEX CORP., Air Express Int'l Corp., et al.,** Appellees.

**Customs Appeal No. 5441.**

United States Court of Customs and Patent Appeals.

June 1, 1972.

L. Patrick Gray, III, Asst. Atty. Gen., Washington, D. C., Andrew P. Vance, Chief, Customs Section, Herbert P. Larsen, New York City, for the United States.

George R. Tuttle, San Francisco, Cal., (Glad, Tuttle & White), San Francisco, Cal., attorneys of record, for appellee.

Before RICH, ALMOND, BALDWIN and LANE, Judges.

LANE, Judge.

■ This is an appeal from the decision and judgment of the Customs Court, 65 Cust.Ct. 320, C.D. 4096 (1970), sustaining the importers' protest against the classification of certain television camera cables under item 688.15 of the Tariff Schedules of the United States (TSUS) as insulated electrical conductors with fittings dutiable at the rate of 17 per centum ad valorem. The importers claimed that the correct classification was under item 685.20 TSUS as television apparatus dutiable at the rate of 10 per centum ad valorem. Our review of the record and arguments convinces us that the judgment of the Customs Court was erroneous, and we reverse.

The pertinent statutory provisions are as follows:

Schedule 6, Part 5:

Classified Under:

Insulated (including enamelled or anodized) electrical conductors, whether or not fitted with connectors (including ignition wiring sets, Christmas-tree lighting sets with or without their bulbs, and other wiring sets):

\* \* \* \* \* \* \*

With fittings:

\* \* \* \* \* \* \*

688.15 Other ..................... 17% ad val.

Claimed under:

Radiotelegraphic and radiotelephonic transmission and reception apparatus; radiobroadcasting and television transmission and reception apparatus, and television cameras; record players, phonographs, tape recorders, dictation recording and transcribing machines, record changers, and tone arms; all of the foregoing, and any combination thereof, whether or not incorporating clocks or other timing apparatus, and parts thereof:

\* \* \* \* \* \* \*

685.20 Television apparatus, and parts thereof ................... 10% ad val.

The three-judge Customs Court was divided on this case. The majority held that the imported cables were not described under item 688.15 and that the importers, appellees here, had established that the cables comprised television apparatus within the purview of item 685.20. Judge Newman, dissenting, was of the view that the cables were insulated electrical conductors as provided for under item 688.15 and that, while they also met the description under item 685.20, they were more specifically provided for under the former item.

The evidence, all introduced by appellees, consisted of a portion of a television camera cable representative of the imported cables, three documentary exhibits, and the testimony of one witness. The record establishes that the cables are used only for electrically connecting the camera head of a particular color television camera with the camera control unit. Each cable includes a fitting at each end with 101 connecting elements soldered, except for some spares, to ends of conductors in the cable. The individual conductors are generally very small, and not all are in the form of wires since some of the connections were made to shielding included in the cable. The conductors are insulated, and the outer surface of the cable is of plastic or rubber. Removable end caps are provided for protecting the fitting when the cable is not in use. When being used, at least the majority of the conductors carry only electric signals or impulses with low electric power characteristics.

■ The first question raised in this appeal is whether or not the cables are described by the provision for insulated electrical conductors in item 688.15. The majority of the Customs Court held that provision to be limited to conductors having the capability of handling "electric power" in contrast to "low current electronic impulses" such as those carried in the main by the imported cables. The majority below drew that conclusion from a consideration of the parenthetical reference in the superior heading of item 688.15 to ignition wiring sets and Christmas tree lighting sets which were regarded as "devices used in connection with electric power." The doctrine of *ejusdem generis*, as applied in Midland International Corp. v. United States, 62 Cust.Ct. 164, 245 F.Supp. 1101, C.D. 3715 (1969),[1] compelled, in the majority's view, the conclusion that such a limitation would apply to all conductors under item 688.15.

We do not agree. As Judge Newman correctly observed, the heading imposes no limitation on the magnitude of the electric current that the conductors can carry. Looking to the language of the provision itself as the best evidence of legislative intent, we find inescapable the conclusion that the purpose of the parenthetical inclusion of the specified wiring and lighting sets was to *extend* the provision for "[i]nsulated * * * electrical conductors" to the named sets which might not otherwise fall within that phrase. See United States v. Kimball Dental Mfg. Co., 19 CCPA 353, 359 (1932). The rule of *ejusdem generis* is one of construction and is never invoked if the legislative intent can be gleaned without resort thereto. Sandoz Chemical Works, Inc. v. United States, 50 CCPA 31, 35, C.A.D. 815 (1963). See also Gooch v. United States, 297 U.S. 124, 128, 56 S.Ct. 395, 80 L.Ed. 522 (1935). In addition, the rule is ordinarily applied to limit provisions in which general words *follow* a specific enumeration of articles, a situation entirely different from that involved here where the general words *precede* the specific enumerations. See *Gooch* and *Sandoz*, supra. Both *Midland* and *General Electric*, supra, were cases in which general words followed specific enumerations and are, therefore, clearly distinguishable from this case.

1. Appellees cited United States v. General Electric Co., 441 F.2d 1186, 58 CCPA 152, C.A.D. 1021 (1971), for the same proposition as *Midland*.

Since the superior heading for item 688.15 does not limit the current or power capabilities of the conductors for which it provides, it follows that the imported cables are described thereunder, and it is unnecessary to consider appellant's contention that, as was found by the dissenting judge, the record shows that some of the conductors do in fact carry "electric power."

We also need not consider appellant's contention that the cables are not properly classifiable in the television apparatus provision of item 685.20 TSUS. Assuming that they are so classifiable, the determinative question becomes which of items 688.15 and 685.20 "most specifically describes" the cables within the meaning of General Interpretative Rule 10(c). That question was not reached by the majority of the Customs Court, but the parties have joined issue on it here. On that issue, we agree with dissenting Judge Newman that:

> Insulated electrical conductors, although taking a variety of forms, are essentially one kind of device. Television apparatus, on the other hand, is comprised of an entire group of varied kinds of devices * * *.

Whatever their particular form, insulated electrical conductors include electrically conductive material and insulating material, and they function to convey electricity from one locus to another. On the other hand, it is a matter of common knowledge that the apparatus used in television transmitting and receiving may include a variety of different electronic circuits performing diverse functions, optical elements for the camera, transmitting and receiving circuitry, and transmitting and receiving antennas. Judge Newman cited a chapter on Television Systems Fundamentals in a book entitled *Television Broadcasting* as setting forth a variety of components used in television systems. Clearly, the television camera cables here are more specifically provided for as insulated conductors of electricity than as apparatus which may perform any of a wide variety of functions in connection with television transmission and reception. We conclude that item 688.15, under which the importations at bar were originally classified by the District Director of Customs, describes the cables "with the greatest degree of accuracy and certainty." United States v. Simon Saw and Steel Co., 51 CCPA 33, 41, C.A.D. 834 (1964).

For the reasons set forth, the judgment of the Customs Court is reversed.

Reversed.